20-1027 United Food and Commercial Workers Union Local 400 Petitioner v. National Labor Relations Board Ms. Jarrett for the petitioner, Ms. Roger Foxo for the respondent. Good morning, counsel. Ms. Jarrett, please proceed when you're ready. Thank you. Good morning, your honors, and may it please the court. Amanda Jarrett on behalf of Petitioner United Food and Commercial Workers Local 400. In this case, the National Labor Relations Board overlooked critical evidence demonstrating that the employer excluded a union organizer from its premises in a manner that singled out the union's protected message for disfavored treatment and thereby violated the National Labor Relations Act. In April 2015, a union organizer accessed the parking lot of Kroger's Store 538, where Local 400 had long represented store employees. The organizer sought to urge customers to support union members who were seeking the opportunity to transfer to two nearby Kroger locations because Store 538 was closing. While Kroger's lease with the shopping center where Store 538 was located contained a no-solicitation, no-loitering rule, Kroger had in the past tolerated a range of solicitation and distribution on its premises. In this case, however, Kroger chose to exclude the union organizer from its premises, and it did so in an unprecedented fashion. Kroger invoked a March 2014 letter from its landlord, which it had never used before. That letter issued on another occasion when the union planned to access the parking lot to disseminate a message protected by Section 7 of the Act. That letter empowered Kroger to have the police respond to protesting and disruptive activities, explicitly including those involving a labor union. Although the administrative law judge found the March 2014 letter relevant to the complaint allegation that Kroger selectively and desperately enforced access restrictions in a manner that interfered with Section 7 activity, the board looked past this straightforward evidence of unlawful discrimination. Can I ask you a question at the outset, which is that the way the board conceived of these arguments is that there's two separate claims that could be raised. One has to do with Sandusky Mall and the board's decision to revisit that line of decisions and come forward with a new rubric. And then the other is the motive-based claim that it sounds like you're focused on here and what your briefing is focused on. And as to the latter one, first of all, it seems to me that you agree in your briefing that those are distinct ways of looking at the scenario. And there's a question raised about whether the motive-based claim is properly before us because it wasn't raised by you before the board and there was no motion for reconsideration filed on that ground. And so under 160E, the board has argued that that's not properly before us. Can you address that? Yes. So the union's position is that the complaint alleges that Kroger, by selectively and desperately applying access restrictions, interfered with Section 7 rights. And the union at all points during this litigation and the general counsel at all points during this litigation found this 2014 letter that we identify in our briefing and which I was just referencing in my opening remarks, this letter was relevant to the question of whether Kroger selectively and desperately applied access restrictions because of the circumstances surrounding its issuance, its wording, and its history of not being enforced. The union was not required to file a motion for reconsideration because the relevance of that letter was urged both before the administrative law judge and the board. The board had adequate notice of the argument that the union is now advancing on review and rejected it, finding instead that the letter would only potentially be relevant to an allegation of an unlawful promulgation, which is not something that was raised in this case. So but as I read our decisions, we have this as an HTA corporation versus NLRB, and the language of that decision says, a party may not rely on arguments raised in a dissent or on a discussion of the relevant issues by the majority to overcome the Section 10 e-bar. The act requires the party to raise its challenges itself. So the fact that it was before the board in the sense that the board addressed it, the majority engaged, at least in footnotes, and then decided not to treat with it, that it's from the language in HTH, it's not enough that the board had the argument before it in that sense. It requires that the party raise the challenges itself. So the union's position is that much like in this court's decision in the American Postal Workers case, there was both discussion in the underlying administrative law judge decision and in the briefs before the board that was in both the general counsel's brief on cost exception and in the union's brief that this letter was raised, and it was relevant to the question of whether there was a selective and disparate application of the access restriction. And so it wasn't simply that the dissent raised the issue, and it wasn't present in the case before. The board also opens itself, I think, to this issue by the fifth footnote of the decision in order, discussing the fact that in a case like this where there is some indication that the purpose of Section 7 activity and the union's message itself is potentially relevant even under the standard the board announces. So I think overlooking the evidence that the union raises in this appeal is a real problem. The fact that the evidence, and one more question along these lines, the fact that the evidence, the letter might be relevant to something doesn't mean that the argument was raised. I mean, it's true that you can use evidence in service of many different propositions, but the question, it seems like under our decisions, is whether the challenging party now put forward that argument before the board. And it doesn't seem to me that you dispute that the union didn't put forward that argument. Your position is, and I understand it, your position is that, well, regardless, we're relevant, and the argument was before the board, but I take it you don't dispute the proposition that the union didn't put forward that argument before the board. I mean, the union referred to the letter both in its brief before the board and the general counsel certainly in its brief on cross-exception raised the point. But just referring to the letter doesn't mean making the argument about motive. There's the other argument that was made as to which the letter might be relevant to. But it didn't seem like in your briefing or today, and I'm not saying you necessarily lose because of this. I just want to understand the position that you're taking, that you're not saying that we're OK because we, in fact, did make the argument. You're saying we're OK because the argument was before the board. Correct. And I think the union's view is that the American postal workers decision that I referred to is a very similar type of procedural posture that this case is in. And I also just want to sort of take this chance to recast a little bit something that I think the board says in its brief that the union challenges, which is this implication that there are somehow two analytically distinct types of discrimination cases. And I think the union's view is that that's mistaken. There's only one kind of discrimination case. And this evidence was relevant to the complaint allegation. And, you know, we only need to get into the kind of analysis the board did here, where we compare all the history, as in the Sandusky-Mall line of cases, when we don't have the kind of evidence of discriminatory motive that's present in this case. This is really that kind of rare, easy case where we have a much clearer story of discrimination. And for that reason, you know, even accepting that the letter was one of several factors that was discussed at earlier phases of this case, it's a very important one. And the board should have at least treated with it. Just to sort of return to that point a little bit, you know, the union's view is that this March 2014 letters wording, the circumstances of its issuance and its unprecedented use to exclude the union organizer had to be relevant to the board's discrimination analysis. In most cases, it's difficult to ascertain whether an employer's decision to treat union organizers differently is rooted in animus. And that's why the board typically engages in a more searching type of inquiry. But whereas here we have evidence that very clearly indicates animus, that ends the inquiry. What is the evidence? The evidence is what? One line by the former employee who said that he believed that the letter was prompted by a desire to keep the union organizers out of the property. Is that it? I think that's one important piece of evidence. What was the basis for his belief? Because he was a store manager at the time and knew about the union's plan to engage in a similar type of solicitation that occurred in this case and that that was the response to. But he didn't say he knew. He said he just said he believed and there's one line and that's it. You talk about overwhelming evidence. I hardly think that's even substantial evidence. With respect, I think it's important to note that it's uncontradicted evidence and there was no effort to try and articulate any other justification on why bother contradicting it when the when when the general counsel wasn't even arguing that that motivation was the. He said there was only one issue and that was disparate treatment. Again, I think this question about whether there's one issue or two is an important one for the union, and our view is that, in fact, this complaint allegation, which is selective and disparate enforcement, the question of why the employer selectively and disparately enforced an access restriction is relevant. And, you know, under the 10th Circuit's decision in the 4B case and other decisions like that, the board has to take that into consideration because what Section 8A1 of the Act prohibits is interfering with protected activity and with singling out the union's message for disparate treatment. So it's not just that one line of testimony that we're talking about. It's also the wording of the letter. It singles out unions explicitly. It doesn't cast its prohibitions in general terms. And it talks about protesting and disruptive activities. There's no indication of any other groups that tried to access the property for those reasons. I see I'm at time, but I'm happy to answer more questions. My colleagues don't have any further questions for you now. We'll hear from the board, and we'll give you a little bit of time for rebuttal. Thanks. Ms. Rajapaksa. Thank you, Your Honor. May it please the Court. My name is Meelakshmi Rajapaksa, and I'm counsel for the National Labor Relations Board. The board resolved a single issue in this case, which was whether Kroger discriminated within the meaning of Babcock by allowing non-employee charitable and civic organizations to solicit on its leased premises while denying access to a non-employee union representative who sought to encourage a boycott of Kroger stores. The board resolved this issue in favor of Kroger, and after reconsidering and revising its understanding of what it means to discriminate by allowing other distribution in the language of Babcock, the board dismissed the complaint. In the present appeal, as I understand it, the union does not challenge the board's revised understanding of Babcock and what it means to discriminate by allowing other distribution. Instead, the union claims that the board could have withheld judgment on the issue of disparate treatment that was specifically litigated and could have instead found a violation on a different ground that Kroger allegedly acted with anti-union animus. And the problem with this argument is sort of twofold in terms of procedure. The general counsel in the litigation below never suggested that there were two independent grounds for finding unfair labor practice in this case. The general counsel at all times argued that Kroger engaged in disparate treatment under which was a case interpreting Babcock. And so to the extent that the union is now proposing a different path to find a violation, it is literally adding to the general counsel's theory of the case, which is something it cannot do under section 3D of the act. The further procedural problem for the union is that it never raised this alternative path to a violation before the board. And it certainly could have done that after the board's decision issued and it became clear that the board viewed this as a pure disparate treatment case under Babcock. That was the moment when the union could have and should have told the board, no, you've misconceived the issue of discrimination before you. It encompasses, as Ms. Jarrett has said, more than simply disparate treatment. That was the moment for the union to raise that issue. And I do have to disagree with the union that this argument was before the board on exceptions. It was not. If you look at the briefing before the board, you'll see there was no separate analytical path outside of disparate treatment that was presented to the board. So there may be evidence that was raised in the litigation before the board, but the evidence was used for a different purpose. And so for both of those reasons, I would say that the court should not reach the union's argument. If it does reach the merits of the argument, though. Can I just ask one, before you get to the merits, just one question on the procedural arguments you've raised. So suppose that the, suppose, and I know you'll disagree with this premise, but I'm just interested in exploring it. Suppose that we think that the general counsel at least put forward this strand of the argument, the motive strand of the argument. At least it was sufficiently within the rubric of what the general counsel was urging, but the union never did. And then the board and its decision, the dissent, of course, addressed the issue. And then the majority responds and says, A, that issue is not properly before us. And B, even if it were, we would disagree on the merits. That's what they say in footnote 23, I think. If that's the scenario, then do you think that the union is out of luck procedurally because they didn't file a motion for reconsideration? Or do you think the fact that, by hypothesis, the general counsel put the argument before the board is enough? I think the requirement of section 10E is that the union, the party, has to urge the objection before the board. So technically speaking, the union cannot rest on the idea that it was vaguely before the board or that another party had raised it. The board's position would be that the union itself had to raise the argument before the board. How do you get that out of 160E? It's written in the passive as if it doesn't matter who makes the objection as long as the objection has been made. So why does it have to be the union? Why can't it be the general counsel? Well, Your Honor, I disagree that 160E clarifies this. But I think— No objection that has not been urged before the board, et cetera, shall be considered by the court. Well, it doesn't say who has to raise the objection. Right. I believe the cases show that there is an affirmative obligation on the party advancing the argument to affirmatively urge its argument before the board. But even if somehow the general counsel had raised this, which, again, the general counsel did not, there still is a question about whether this was—whether this is an argument that was fully litigated before the board. I mean, there may be some vague way for the union to say that the general counsel raised this, but there is still a question about whether it was fully and fairly litigated as an alternative theory. And the board believes that it wasn't. In terms of the substance of the union's animus argument, the letter on which the union relies was issued by Kroger's landlord. And there is simply no basis in the record to attribute the letter or any animus that may lay behind the letter to Kroger. In addition, the letter on its face, contrary to what the union says, did not discriminate or single out unions for different treatment. It said that any picketing, demonstrating, and related disruptive activities on the premises would be prohibited whether or not involving a labor union. And finally, Kroger didn't—Kroger's use of the letter doesn't suggest anti-union animus because Kroger used the letter in a circumstance where it was presented with protest activity that fell squarely within the ambit of the letter. And there is no surrounding circumstance that would suggest that Kroger's use of the letter was motivated by animus. Kroger had never permitted anything on its property like this boycott activity that the was attempting to conduct. And so for all of these reasons, the board believes that the court should not address the union's legal argument about motive because it was never presented to the board in the first instance. But even if the court were to reach the argument, it should find an agreement with the board in its brief that there is no evidence of anti-union animus that would compel the board to find merit in the general counsel's complaint. So is your position on the merits that there's no evidence of anti-union animus or that there's no evidence at all because there is the testimony that the ALJ credited about the origination of the policy, right? Right, there is testimony in the record from one manager about his belief that the letter issued in response to union activity on the premises. But there's no detail as far as the basis for that belief or any reason to think that Kroger was involved in the genesis or issuance of that letter. That manager literally presented one sentence of testimony on this letter and it was very vague. So certainly, although there may be evidence that one could cobble together from this record that might suggest animus, it is certainly not evidence that would compel a finding of animus, which is what the union is suggesting. The board did actually address much of this evidence in the course of its response to the dissent. And its discussion really shows that there is no reasonable basis on this record to conclude that Kroger acted based on anti-union animus. You're talking about the discussion in footnote 23? Yes, I am. Yes. Can I ask a question? That is, is it in the record whether this letter went to the other tenants? That I don't believe that's in the record, Your Honor. Okay. Is it in the record that there are other tenants? Yes, that is in the record. There was, yes, there are. There are several other tenants of this shopping center. If the court has no further questions for me, I would respectfully request that the court deny the union's petition for review. Thank you. Thank you, Ms. Rajapaksa. Ms. Jarrett, we'll give you two minutes for rebuttal. Thank you, Your Honor. The board's effort to articulate two analytically distinct theories of discrimination is erroneous, and this has an effect on both the procedural and substantive arguments in the case.  In the union's view, the essence of a Section 8A1 violation is to treat the union differently, and based on longstanding precedent, when a property owner like Kroger does something inconsistent with its practice and, as it did in this case, invokes a letter which, by its terms, on its face, singles out the union for different treatment and which has never been invoked against any other of the many non-employee groups that sought to access the property to engage in similar activities, that constitutes discrimination. Under Babcock and Stove Spinning and the earlier line of NLRB cases that form the basis of the discrimination exception. Because the board's decision to overlook this evidence, which was properly before it, and which, taken together, shows that what appeared, perhaps, to be a neutral property restriction was, in fact, a vehicle designed to empower Kroger to target the union and to take action against it that it had never taken against any other groups, the board should have dealt with that evidence. Now, the union's position is not that this court can find, on the basis of this alone, that the board's decision was wrong. This court should remand the matter to the board so that it, in the first instance, can weigh the significance of the letter, the circumstances surrounding its issuance, and the history of its selective enforcement because it's that evidence which the union stands or falls. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Randolph